INDUSTRIAL ENERGY CONSUMERS OF OHIO POWER COMPANY ET AL., APPELLANTS, *v.* PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *Indus. Energy Consumers of Ohio Power Co. v. Pub. Util. Comm.* (1994), 68 Ohio St.3d 559.]

(Nos. 93–471 and 93–1861—Submitted December 14, 1993—Decided March 30, 1994.)

562

---

*Emens, Kegler, Brown, Hill & Ritter, Samuel C. Randazzo, Richard P. Rosenberry* and *Denise C. Clayton,* for appellant Industrial Energy Consumers of Ohio Power Company.

*Hahn Loeser & Parks, Janine L. Migden* and *Maureen R. Grady,* for intervening appellant Sierra Club in case No. 93–471.

*Lee Fisher,* Attorney General, *James B. Gainer* and *William L. Wright,* Assistant Attorneys General, for appellee Commission.

*Edward J. Brady, Marvin I. Resnik* and *Richard Cohen,* for intervening appellee Ohio Power Company.

---

*Per Curiam.* Pursuant to R.C. 4909.191(C), Ohio Power has the burden of proving that its fuel acquisition and delivery costs are "fair, just, and reasonable."

The stipulation of some of the parties to this proceeding is, in itself, insufficient to satisfy this burden. Rather, such stipulations are considered merely as recommendations to the commission and, while entitled to substantial weight, they must be supported by the evidence of record to withstand scrutiny under the standard of review provided in R.C. 4903.13. *Consumers' Counsel* (1992), *supra.* See, also, *Akron v. Pub. Util. Comm.* (1978), 55 Ohio St.2d 155, 157, 9 O.O.3d 122, 123, 378 N.E.2d 480, 483; *Duff v. Pub. Util. Comm.* (1978), 56 Ohio St.2d 367, 379, 10 O.O.3d 493, 499, 384 N.E.2d 264, 273. Under that standard, this court will not reverse or modify a commission order as to questions of fact where the record contains sufficient probative evidence to show that the commission's determination is not manifestly against the weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. However, as to questions of law, this court has complete and independent power of review. *MCI Telecommunications Corp. v. Pub. Util. Comm.* (1988), 38 Ohio St.3d 266, 268, 527 N.E.2d 777, 780. We review appellants' two propositions of law with these standards in mind.

## I

R.C. 4905.01(F) requires the commission to establish a cost for affiliate coal that is reasonable when compared to the price of coal "purchased from all independent like mining operations." Appellants argue that the commission erred by comparing the aggregate cost of Ohio Power's affiliate coal to the aggregate price of the company's non-affiliate contract purchases. They contend (1) that the word "all" requires a comparison to non-affiliate coal purchases made by a larger, albeit unspecified, group of electric utilities, and (2) that the phrase "like mining operations" requires a comparison of the coal costs of each affiliated mine to purchases from non-affiliated mines which use the same mining techniques (*e.g.,* longwall).

The phrase at issue begs the question: "Purchased by whom?" We find no support in the language of the statute for appellants' construction. Rather, the phrase's only antecedent ("by the company") supports the commission's long-standing administrative interpretation of the statute (see Ohio Adm.Code 4901:1–11–10[G][12] [4]), which we find to be reasonable. R.C. 1.42.

---

4. *Ohio Adm.Code 4901:1–11–10* provides in part:
   "(G) Audit procedures for fuel supplies owned or controlled by the electric utility.
   "The procedures which the auditor shall follow in reviewing fuel supplies owned or controlled by the electric utility are:
   " * * *
   "(12) Develop for each fuel supplier which is owned or controlled by the electric utility comparisons of the cost per million British thermal units of fuel supplied to the electric utility

Nor do we find a basis for reversal by reason of the commission's comparison of the numerous affiliate and non-affiliate mining operations in the aggregate. By their argument, appellants speculate that non-affiliate prices under their preferred methodology would be lower and, further, that the lower non-affiliate price would compel the commission to set a lower price for affiliate fuel. We found such speculation insufficient to sustain the appellants' burden in *Consumers' Counsel* (1992), *supra,* and find it particularly so in this case, considering the discretion which R.C. 4905.01 vests in the commission in setting the price of affiliate coal. See *Consumers' Counsel* (1983), *supra.* We conclude, on this record, that the commission's comparison of affiliate prices to the company's non-affiliate contract purchases amply supports its determination.

## II

As set forth above, the stipulation provides that if Ohio Power is able to reduce its actual fuel costs during a given period below the predetermined price, the company may apply the difference to accelerate recovery of its affiliate mining investment, related liabilities, and direct closure-related costs.[5] Appellants argue that this provision is unlawful because it would require current EFC customers to pay more than the actual fuel acquisition costs attributable to them. They rely on *Ohio Power Co. v. Pub. Util. Comm.* (1978), 54 Ohio St.2d 342, 8 O.O.3d 353, 376 N.E.2d 1337, in which we found that "[f]uel adjustment clauses are not and may not be permitted to become carte blanche authorization to an electric utility to pass through to its tariff customers expenses other than fuel costs fairly attributable to the production of the service to those customers." *Id.* at 344, 8 O.O.3d at 354, 376 N.E.2d at 1338. See, also, *Pike Natural Gas Co. v. Pub. Util. Comm.* (1981), 68 Ohio St.2d 181, 22 O.O.3d 410, 429 N.E.2d 444, and *Montgomery Cty. Bd. of Commrs. v. Pub. Util. Comm.* (1986), 28 Ohio St.3d 171, 28 OBR 262, 503 N.E.2d 167.

While we reaffirm the general principles enunciated in the above cases, we note that we have also permitted a utility to recover other than its actual fuel acquisition and delivery costs through the EFC rate pursuant to R.C. 4905.301 and 4905.69,[6] when the rate provided positive energy efficiency incentives and

---

during the EFC audit period to the cost per million British thermal units for similar quality coal purchased by the electric utility during the same period from all independent like mining operations under similar term contracts."

5. This difference amounted to $1,465,757 in PUCO No. 93–01–EL–EFC.

6. R.C. 4905.301 provides:
   "Nothing in this section shall preclude the use of a fuel component that creates positive efficiency incentives for minimizing the costs of electric service."

helped to minimize the cost of electric service to the benefit of the utility and its consumers alike. See *Consumers' Counsel v. Pub. Util. Comm.* (1978), 56 Ohio St.2d 319, 10 O.O.3d 443, 384 N.E.2d 245, and *Consumers' Counsel v. Pub. Util. Comm.* (1979) 57 Ohio St.2d 78, 11 O.O.3d 245, 386 N.E.2d 1343, in which we upheld the recovery of purchased power costs through the EFC when less than the utility's own generation costs.

Appellants argue that the above cases are not controlling, claiming that when the General Assembly subsequently enacted R.C. 4909.159 to specifically include the recovery of purchased power costs through the EFC rate, it explicitly excluded the recovery of all other non-acquisition or delivery costs by providing that "[n]o other charges may be allowed in the rule promulgated pursuant to divisions (C) and (E) of section 4905.69 of the Revised Code." R.C. 4909.159(B). We disagree.

R.C. 4909.159 addresses only purchased power costs. The prohibition against recovering "other charges" through the EFC rate relates only to charges (*e.g.*, demand charges) incurred in purchasing the power in question. Indeed, the statute permits recovery of even those charges in cases where the transaction reduces a utility's fuel costs. The statute does not restrict the commission's authority to establish other cost incentives for efficient fuel procurement practices under R.C. 4905.69(C), nor does it affect the commission's authority under R.C. 4905.301. We recognized as much in *Consumers' Counsel v. Pub. Util. Comm.* (1992), 63 Ohio St.3d 531, 589 N.E.2d 1273, in which we upheld the commission's allowance of legal fees incurred in acquiring a new leasehold interest in nuclear fuel when the transaction significantly reduced the fuel costs of the utility and its customers.

Appellants do not dispute that Ohio Power will be provided an incentive to reduce its fuel costs under the stipulation and that the company's consumers will receive a benefit to which they would not otherwise be entitled through the 0.22 mill per kilowatt hour energy credit. Moreover, as discussed above, the commission has found that the company's affiliate coal prices at issue in this case are reasonable. Thus, the stipulation would provide an incentive to the company, which might not otherwise be present, to reduce those costs even further. Although the potential further reductions would not be immediately passed on to consumers, we cannot find that EFC customers would be paying more than they would have absent the stipulation. Indeed, the stipulated cap of 164 cents per

---

R.C. 4905.69(C) provides:

"The public utilities commission shall promulgate a rule that * * * [e]stablishes incentives, in terms of costs that may be recovered by electric light companies pursuant to a fuel component for the implementation and employment by such companies of efficient fuel procurement and utilization practices * * *."

MMBtu is below the company's average costs during the audit period of 166 cents per MMBtu. Accordingly, we find the commission's adoption of the stipulation, and its accelerated recovery provision, to be lawful under R.C. 4905.301 and 4905.69.

Based on the foregoing, the order of the commission is affirmed.

*Order affirmed.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, FAIN, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MIKE FAIN, J., of the Second Appellate District, sitting for WRIGHT, J.