OPINION
Plaintiff-Appellant Karen A. Kaplun appeals the trial court's grant of summary judgment to Defendants-Appellees L. Peter Brenner, M.D., and J.B. Frost, M.D., on grounds that Kaplun failed to file her medical malpractice suit within the time allowed by the applicable statute of limitations. Kaplun claims a genuine issue of material fact existed with respect to when the statute of limitations began to run, thereby precluding disposal of the case by summary judgment.
From the record, the following facts are revealed. Kaplun began seeing Dr. Brenner for regular gynecological exams in 1980. On Dr. Brenner's advice, Kaplun arranged to have a baseline mammogram in December of 1995. After the mammogram was performed, the x-rays were read by Dr. Frost, who detected no suspicious masses, and the results were forwarded to Dr. Brenner's office. On December 22, 1995, Kaplun was examined by Dr. Brenner at her regularly scheduled annual visit. Dr. Brenner discovered a lump in Kaplun's right breast that he described to her as being "about the size of a 50-cent piece" and in the "10 to 12 o'clock" position in the breast. Although Kaplan expressed concern, Dr. Brenner assured her that it was nothing more than fibrocystic breast disease, which is common in women Kaplun's age, and that there was no cause to worry or to see a surgeon.
During the next year, Kaplun continued to perform self-examinations of her breasts and thought she detected some change in the size of the lump in mid-1996. Remembering that Dr. Brenner had told her fibrocystic breast disease caused the lump and that its shape and size would vary, however, she was not overly concerned about the change at that time. In December of 1996, Kaplun had a second mammogram performed in anticipation of her annual exam by Dr. Brenner. Later that month, Dr. Brenner told Kaplun that although he still believed she suffered from fibrocystic breast disease, he recommended she see a surgeon about the lump in her breast. Kaplun immediately made an appointment with Dr. Catherine Schmidt, who performed a needle biopsy and on December 27, 1996, diagnosed Kaplan with breast cancer. Dr. Schmidt's diagnosis was confirmed by Dr. Rebecca Glaser, who also took a needle biopsy of the lump, and ultimately performed a modified radical mastectomy on Kaplun.
Shortly after Kaplun's surgery, Dr. Glaser provided her with a copy of her medical records and suggested she read them. Upon doing so, Kaplun saw for the first time Dr. Frost's report to Dr. Brenner about her 1995 mammogram. In that report, it was recommended that Kaplun have a follow-up mammogram six months later. This information had never been conveyed to Kaplan. Also, during an August, 1997, consultation with Dr. Edward Hughes as to the utility of radiation therapy, Dr. Hughes expressed concern over the medical care Dr. Brenner had provided to Kaplun. On September 22, 1997, Kaplun contacted Dr. Brenner's office and requested that her medical records be sent to her new gynecologist, Dr. Cathy Leisner.
On January 12, 1998, Kaplun filed her complaint in the Montgomery County Common Pleas Court alleging that Dr. Brenner had negligently failed to diagnose her breast cancer. In a September 3, 1998, amended complaint, Kaplun asserted a second claim for relief in which she alleged medical malpractice on Dr. Frost's part in the reading of her 1995 mammogram and his failure to diagnose her cancer. Drs. Brenner and Frost both moved for summary judgment on grounds that Kaplun had filed her complaint and amended complaint beyond the expiration of the one-year statute of limitations applicable to medical malpractice actions. The trial court agreed and granted summary judgment to both defendants, and Kaplun's timely notice of appeal followed.
Kaplun asserts a single assignment of error on appeal which is set forth as follows:
 The trial court erred in sustaining Defendants/Appellees' respective motions for summary judgment on the grounds that Plaintiff/Appellant failed to file her medical malpractice claims against them within the statute of limitations set forth in R.C. 2305.11(B)(1).
Kaplun contends that summary judgment in favor of Drs. Brenner and Frost was inappropriate because there was a genuine issue of material fact as to when the statute of limitations period began to run. In addressing Kaplun's assignment of error, we note that to succeed on a motion for summary judgment, a movant must demonstrate (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,66; Civ.R. 56(C). Conclusory assertions that the nonmovant has no evidence to prove her case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., which affirmatively demonstrate that the nonmovant has no evidence to support her claims. Dresher v.Burt (1996), 75 Ohio St.3d 280, 293; Civ.R. 56(C). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant. Moreover, the standard of review in an appeal from a grant of summary judgment is de novo. Grafton v.Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105, citing MCITelecommunications Corp. v. Public Util. Comm. (1988), 38 Ohio St.3d 266,268 and Industrial Energy Consumers of Ohio Power Co.v. Public Util. Comm. (1994), 68 Ohio St.3d 559, 563. With these principles in mind, we proceed to consider the merits of Kaplun's assignment of error.
R.C. § 2305.11(B)(1) sets forth the statute of limitations applicable to medical malpractice claims as follows:
 * * * [A]n action upon a medical * * * claim shall be commenced within one year after the cause of action accrues, except that, if prior to the expiration of that one-year period, a claimant who allegedly possesses a medical * * * claim gives to the person who is the subject of that claim written notice that the claimant is considering bringing an action upon that claim, that action may be commenced against the person notified at any time within one hundred eighty days after the notice is so given.
Thus, a plaintiff must file her medical malpractice claim within one year from the date her cause of action accrues unless she has informed the potential defendants that she is considering a medical malpractice suit against them by way of a written "180-day letter." Since Kaplun did not send a 180-day letter to either Dr. Brenner or Dr. Frost, her action is barred by the statute of limitations if it was filed more than one year after her cause of action accrued.
Respecting the triggering event for the running of a statute of limitations in a medical malpractice action, the Ohio Supreme Court has held as follows:
 [A] cause of action for medical malpractice accrues and the one-year statute of limitations commences to run (a) when the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury, or (b) when the physician-patient relationship for that condition terminates, whichever occurs later.
Frysinger v. Leech (1987), 32 Ohio St.3d 38, paragraph one of the syllabus. The supreme court elaborated on the first of these triggering events in Hershberger v. Akron City Hosp. (1987),34 Ohio St.3d 1. There, it set forth a three-pronged process for determining when a cause of action accrued which required the trial court to look to the facts of the particular case and decide (1) when the injured party became aware, or should have become aware, of the extent and seriousness of his condition; (2) whether the injured party was aware, or should have been aware, that such condition was related to a specific professional medical service previously rendered him; and (3) whether such condition would put a reasonable person on notice of need for further inquiry as to the cause of such condition. Id., paragraph one of the syllabus. Two years later, the court refined the Hershberger test stating as follows:
 Admittedly, "extent and seriousness" are not terms of art and, therefore, do not lend themselves to easily discernible definitions. Since the three prongs of Hershberger
overlap considerably, we believe that the best manner in which to explain "extent and seriousness of his condition" is to combine the three prongs. Thus, we now hold that the "extent and seriousness of his condition" language of the test set forth in Hershberger * * * requires that there be an occurrence of a "cognizable event" which does or should lead the patient to believe that the condition of which the patient complains is related to a medical procedure, treatment or diagnosis previously rendered to the patient and where the cognizable event does or should place the patient on notice of the need to pursue his possible remedies.
Allenius v. Thomas (1989), 42 Ohio St.3d 131, syllabus and 133. The court defined a "cognizable event" as "some noteworthy event * * * which does or should alert a reasonable person-patient that an improper medical procedure, treatment, or diagnosis has taken place." Id. at 134.
Dr. Brenner
 In the present case, Kaplun argues that the trial court erred in finding that her December 1996 diagnosis of cancer was the cognizable event that set the statute of limitations running on her medical malpractice suit against Dr. Brenner. Instead, she claims, she only began to question the care rendered by Dr. Brenner after two other doctors, namely Drs. Glaser and Hughes, expressed concern over Kaplun's treatment under Dr. Brenner. Kaplun also contends that the very earliest date she might have discovered Dr. Brenner's malpractice was on January 28, 1997, when she received a copy of her medical records from Dr. Glaser.
We note that the trial court cited various instances in Kaplun's deposition in which she acknowledged that upon being diagnosed with cancer in December of 1996 she immediately believed that Dr. Brenner's 1995 diagnosis of fibrocystic breast disease was incorrect. Docket No. 61 at 11-12. The trial court went on to state the following with regard to Kaplun's subsequently submitted affidavit:
 [I]n conjunction with her response to the Defendants' motions for summary judgment, Ms. Kaplun submits her May 3 affidavit in which she states that she "had no reason to believe that L. Peter Brenner . . . had committed medical malpractice * * *. This affidavit was filed approximately one month after Defendants' motions for summary judgement had been filed. Such a self-serving affidavit by a party, contradicting that same party's earlier sworn testimony subject to cross-examination, should be given no weight. Rogan v. Beerman Realty Co., et al. (Ohio App. 2d Dist. 1987), 1987 WL 6831, *2. This court finds that Ms. Kaplun's May 3 affidavit would cause no reasonable fact finder to discount her February 23 [deposition] testimony.
Since our decision in Rogan, however, the supreme court has held that conflicts between a nonmovant's deposition testimony and her affidavit filed in opposition to a movant's motion for summary judgment must be construed in the nonmovant's favor. Bowen v.Kil-Kare, Inc. (1992), 63 Ohio St.3d 84, 88. Presumably, if a trial court finds the movant filed her affidavit in bad faith, it would be within the trial court's discretion to disregard the document. See Id. at 88, fn. 4. Having made no such finding in the present case, however, the trial court erred in weighing and discounting the credibility of Kaplun's sworn affidavit.
Nevertheless, because the test for determining when a cognizable event has occurred is objective rather than subjective, we find the trial court's error to be harmless. See Rose v.Women's Health Clinic (1993), 90 Ohio App.3d 776, 780. As the supreme court stated in Flowers v. Walker (1992), 63 Ohio St.3d 546,549:
 [C]onstructive knowledge of facts, rather than actual
knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule. A plaintiff need not have discovered all the relevant facts necessary to file a claim in order to trigger the statute of limitations. Rather, the "cognizable event" itself puts the plaintiff on notice to investigate the facts and circumstances relevant to her claim in order to pursue her remedies. (Cites omitted.)
Thus, even if Kaplun's statements in her deposition concerning what she knew and when she knew it are ignored, the statute of limitations might still have begun to run on the date of her cancer diagnosis if that occurrence were such that it should have
led Kaplun to believe that the condition was related to a medical diagnosis she previously received or that it should have placed her on notice of the need to pursue her possible remedies.Allenius, supra at syllabus.
In determining whether that is the case, we look to the particular facts and circumstances surrounding Kaplun's illness and eventual diagnosis. In 1995, Dr. Brenner discovered the lump in Kaplun's breast and diagnosed her with fibrocystic breast disease. In 1996, he maintained that the lump was the result of fibrocystic breast disease, but recommended Kaplun see a surgeon. Days later, after Dr. Schmidt's needle biopsy of the same lump that was discovered by Dr. Brenner in 1995, Kaplun was diagnosed with cancer. In our view, these facts should have lead Kaplun to believe that Dr. Brenner's diagnosis of fibrocystic breast disease was incorrect, or should have placed her on notice that she needed to pursue possible legal remedies. At that point, Kaplun had an affirmative duty to "(1) determine whether the injury suffered is the proximate result of malpractice and (2) ascertain the identity of the tortfeasor or tortfeasors." Flowers, supra at syllabus. We consequently conclude that the trial court did not err in finding that under the discovery rule, reasonable minds could only conclude that the statute of limitations on Kaplun's medical malpractice action against Dr. Brenner began to run on the date of her cancer diagnosis. Since her complaint was not filed within one year of that date, her claim is barred by the statute of limitations.
We note that Kaplun cites our decision in Delong v. GreeneCty. Mem. Hosp. (Feb. 2, 1994), Montgomery App. No. 14161, unreported, in support of her contention that her cancer diagnosis was not a cognizable event that triggered the running of the statute of limitations. In that case, we found, under facts somewhat similar to those in the instant case, that neither the plaintiff's diagnosis of cancer nor the defendant doctor's acknowledgment that a mammogram taken three years prior to the plaintiff's cancer diagnosis had revealed some irregularity constituted a cognizable event for statute of limitations purposes. In particular, we stated that "we are required to conclude that the plaintiff was not aware [at the time of her mastectomy] * * * that her breast cancer was related to a specific medical diagnosis, treatment, or procedure that the patient previously received." Id. at *3. After careful consideration ofDelong, however, we find that the issue of whether her diagnosis or the defendant doctor's acknowledgment should have led her to believe her condition was related to a previous medical diagnosis was not but should have been addressed pursuant to Flowers. Therefore, the precedential value of Delong is questionable.
Under Frysinger, supra, Kaplun's claim against Dr. Brenner might still be timely if it was filed within one year of the termination of the physician-patient relationship. 32 Ohio St.3d at paragraph one of the syllabus. We note, however, that Kaplun did not raise this issue in her appellate brief, but instead argued it in her reply brief. The Rules of Appellate Procedure require appellants to include all assigned errors, issues presented for review, and argument with respect to each assignment of error to be included in the appellant's brief, and they make no provision for introducing new assignments of error or raising new issues in a reply brief. Hill v. Urbana (1997), 79 Ohio St.3d 130,135, fn. 2; State v. Murnahan (1996), 117 Ohio App.3d 71, 82; App.R. 16(A)(3), (4), and (7); App.R. 16(C). Nor is the issue properly presented for review by Kaplun's mere mention of it as a basis for her opposition to Appellants' motions for summary judgment in the trial court as part of her account of the procedural history of the case. Since Kaplun's argument in her appellate brief is devoted solely to issues respecting the discovery rule, we need not consider her claim in her reply brief that her complaint was timely under the termination rule. Hill,supra; Murnahan, supra. We note, however, that even if she had properly asserted her contention in her appellate brief, we would find it to be meritless.
Dr. Frost
According to Kaplun, the cognizable event relating to Dr. Frost's involvement in her case occurred in 1998 when her attorney's independent expert reviewed the 1995 mammogram films and opined that Dr. Frost may have misread them. Although she makes this statement several times in the course of her argument, she offers no explanation or reason why it should be so. Even if, as above, we disregard Kaplun's sworn deposition testimony that she suspected her 1995 mammogram had been misread upon being diagnosed with cancer, it is our view that the diagnosis was a cognizable event which did or should have lead Kaplun to believe that her cancer was related to the 1995 mammogram or did or should have placed her on notice of the need to pursue her possible remedies. Allenius, supra at syllabus. Concomitantly, a duty was imposed upon Kaplun to ascertain the identity of the radiologist who read her 1995 mammogram results and to determine whether he may have misread the films. Flowers, supra at syllabus.
In her affidavit, Kaplun claims she never met Dr. Frost and had no knowledge of his identity until January of 1997 at the earliest. Docket No. 54 at ¶ 25. In addition, she states that she was unaware that Dr. Frost was the radiologist who reviewed her 1995 mammogram films. Id. For the following reasons, however, these facts do not relieve her of her obligation to ascertain Dr. Frost's identity following her cancer diagnosis.
Kaplun attempts to liken her situation to that of the plaintiffs in Akers v. Alonzo (1992), 65 Ohio St.3d 422. There, the record contained no suggestion that the plaintiffs knew or should have known of the existence of certain pathology slides or that those slides had been interpreted by a doctor other than the patient's treating physician. Thus, the court found that the cognizable event took place when the plaintiffs discovered that the slides had been misread and the identity of the doctor who misread them.
In contrast, Kaplun knew someone other than Dr. Brenner had read her 1995 mammogram films and forwarded a report on to Dr. Brenner so he could inform her of the results. Kaplun Deposition at 26-27.[1] In that respect, she and the plaintiff inFlowers, supra, are similarly situated. In Flowers, the supreme court reasoned as follows:
 In the case before us Mrs. Flowers was told on July 1, 1987, that she had breast cancer. At that time she also knew that her November 1986 mammogram had been interpreted as negative. Thus, an occurrence of facts and circumstances had taken place which should have led Mrs. Flowers to believe that her condition was related to previous diagnosis and treatment. * * * What she did not know was who misread the mammogram. That could have been determined before the statute ran. It is no greater burden than that placed on a plaintiff in any tort action.
63 Ohio St.3d at 550. Having found above that Kaplun's cancer diagnosis was the cognizable event with respect to the statute of limitations and her claim against the radiologist who interpreted her 1995 mammogram films, we conclude, as did the Flowers court, that the identity of the radiologist could have been determined before the statute ran. Since Kaplun's amended complaint asserting a cause of action against Dr. Frost was not filed until September of 1998, more than a year and a half after her cancer diagnosis, it is barred by the statute of limitations. Thus, the trial court did not err in granting summary judgment in Dr. Frost's favor.
In closing, we recognize that plaintiffs such as Ms. Kaplun, who must divide their attention between the overwhelming task of fighting a deadly disease and pursuing a medical malpractice claim, undoubtedly and understandably place their survival well ahead of filing a lawsuit on their list of priorities. We are neither unsympathetic to the challenges they face nor blind to the courage they possess in taking on that with which they have been dealt. Our duty, however, is to apply the law and, as we have found no merit to Ms. Kaplun's assignment of error, we are compelled to affirm the judgment of the trial court.
WOLFF, J., concurs.
[1] This acknowledgment is not contradicted by Kaplun's subsequently filed affidavit.