Brown, C.J.,
dissenting.
{¶ 43} I agree with the view expressed by Justice Pfeifer about the important service that the OCC might provide for Ohio consumers, but I do not believe that the PUCO’s orders should be affirmed.
{¶ 44} In my view, the notice published by Vectren did not comply with R.C. 4909.19. That statute requires that a utility seeking a rate increase publish in Ohio newspapers a notice that conveys “the substance and prayer” of its proposal. Similarly, the Vectren notice did not comply with R.C. 4909.18(E), because it failed to “fully disclos[e] the substance of the application” and “include the average percentage increase in rate that a representative industrial, commercial, and residential customer will bear should the increase be granted in full.” I would therefore vacate the PUCO’s order approving a change of Vectren’s rate design to a two-stage modified straight fixed variable rate structure.
{¶ 45} R.C. 4909.18(E) requires a utility seeking a rate increase to first submit to the commission a proposed notice to be published in newspapers in the communities the utility serves. The statute requires the utility to fully disclose the substance of the application. R.C. 4909.18(E) further requires that the notice “prominently state that any person * * * may file * * * an objection to such increase * * *. The notice shall further include the average percentage increase in rate that a representative industrial, commercial, and residential customer will bear should the increase be granted in full.” (Emphasis added.)
{¶ 46} Vectren’s application proposed a two-stage transition from the traditional natural-gas rate design under which it had previously been operating to a straight fixed variable design. In the traditional design, a relatively small portion of the utility’s fixed delivery costs are recovered through a low fixed monthly customer charge with the remaining fixed distribution costs recovered through a rate that varies with gas usage. In a straight fixed variable (“SFV”) design, a utility recovers its costs of delivering gas (which are predominately fixed) separately from the amount of gas that customers actually use (which varies from month to month). The expected result of the Vectren proposal to transition to an SFV design was that most fixed costs of delivering gas would be collected through a higher flat customer charge, with the remaining fixed costs recovered through a correspondingly lower component.
*534 {¶ 47} Vectren undoubtedly was aware at the time it filed its rate increase application that, as the PUCO ultimately acknowledged, under an SFV rate design, “there will be some customers who will be better off and some customers who will be worse off * * *. The levelized rate design will impact low-usage customers more * * *, since they have not been paying the entirety of their fixed costs under the existing rate design. High-use customers, who have been paying more than their share of the fixed costs, will actually experience a rate reduction * ........ Yet nothing in the Vectren notice advised its customers that these consequences would result if the PUCO approved the change to an SFV design that Vectren proposed.
{¶ 48} Vectren provided to the PUCO a proposed R.C. 4909.19 notice when it submitted its application for a rate-design change to an SFV design. The PUCO approved the notice for publication, and it was published. However, in the entire published notice filling a full newspaper page with fine print, there is only one fleeting reference relative to two significant aspects of Vectren’s application: (1) that the proposal included a major change in the fundamental method by which the way gas rates were calculated and (2) that the rate increases would be implemented in stages with the amount of increase varying with consumption. As to these two consequences, the notice contained only this text: “In the Application, VEDO [Vectren Energy Delivery of Ohio, Inc.] proposes changes to its rate schedules to reflect increases to the cost of service. Additionally, VEDO proposes changes to the rate design for Rate 310 (Residential Sales Service) and Rate 315 (Residential Transportation Service) that initiate a gradual transition to a straight fixed variable rate for distribution service.”
{¶ 49} In my view, this notice is deficient because it fails to advise the public that Vectren sought a major change in the way customers are charged for natural gas and failed to notify the public that its proposed “gradual transition” to the new design proposed a two-stage implementation with the first rate increase to take effect on the effective date of the PUCO order approving rates. A second and distinct rate increase would be instituted on November 1, 2010. Upon implementation, each of the two stages would produce different consequences for different categories of consumers.
{¶ 50} Similarly, the notice failed to advise Vectren’s customers of the “average percentage increase in rate that a representative industrial, commercial, and residential customer will bear should [Vectren’s] increase be granted in full.” (Emphasis added.) R.C. 4909.18(E). This is so because the rate-increase application contemplated a second rate increase after implementation of the first stage of implementation of the SFV design. Yet the notice advised only of the percentage increase that would occur if PUCO approved the first-stage increase described in the rate-increase proposal. The notice failed entirely to advise of *535 the percentage increase that would be produced upon implementation of the second stage. Because R.C. 4909.18(E) requires notification of the rate increases that would result should the proposed increase be “granted in full,” the notice fails to comply with the statute as a matter of law.
{¶ 51} In 1977 this court discussed the notice requirement of R.C. 4909.19 as follows:
{¶ 52} “While generally the published notice required under R.C. 4909.19 need not contain every specific detail affecting rates contained in the application (indeed, such a requirement would be highly impractical and unnecessarily expensive), the court notes that the statute does require that the ‘substance’ of the application be disclosed; i.e., that the essential nature or quality of the proposal be disclosed to those affected by the rate increases. Although there is no specific test or formula this court can apply in reviewing challenges made by subscribers with respect to the sufficiency of the notice provided by a utility, it is clear, given the purposes of the publication requirement under R.C. 4909.19, that a highly innovative and material change in the method of charging customers should be included in the notice.” (Emphasis added.) Committee Against MRT v. Public Util. Comm. (1977), 52 Ohio St.2d 231, 233, 6 O.O.3d 475, 371 N.E.2d 547.
{¶ 53} In my view, the change to an SFV design proposed by Vectren constituted a “highly innovative and material change in the method of charging customers” that Vectren was required to explain in its R.C. 4909.19 notice. In notifying its customers that Vectren “proposes changes to the rate design * * * that initiate a gradual transition to a straight fixed variable rate for distribution service,” Vectren failed to disclose the essential nature or quality of their proposal. I believe that R.C. 4909.18 and 4909.19 contemplate that a consumer be provided meaningful notice — not a cryptic single sentence containing a significant proposed change camouflaged by industry jargon and placed within a full newspaper page of fine print.
{¶ 54} I do not believe that it would have been unduly burdensome to provide Vectren’s consumers with basic information as to both the nature of an SFV rate design and the potential consequences to them of its adoption. In Texas, a gas utility proposed a significant change in its rate schedule and published a notice that included the following information:
{¶ 55} “• ‘The proposed change will have differing impacts on individual customers, depending on consumption and current applicable rate schedules.’
{¶ 56} “• A residential customer receiving a bill for 6 Mcf would incur ‘an average increase of approximately $3.59 per month a 9.4% increase’; a commercial customer receiving a bill for 30 Mcf would incur ‘an average increase of approximately $13.91 per month or an 8.7% increase’; while ‘[t]he effect of the *536 proposed changes to rates and services for individual customers, which may be significant for individual customers, will vary depending on type of service and consumption.’ ” Dallas v. RR. Comm. of Texas (Tex.App.2008), 2008 WL 4823225, Util. L.Rep. 27,027.
Janine L. Migden-Ostrander, Ohio Consumers’ Counsel, and Maureen R. Grady, Joseph P. Serio, and Michael E. Idzkowski, Assistant Consumers’ Counsel, for appellant.
Richard Cordray, Attorney General, William L. Wright, Section Chief, and Werner L. Margard III, Assistant Attorney General, for appellee Public Utilities Commission of Ohio.
McNees, Wallace & Nurick, L.L.C., Samuel C. Randazzo, Gretchen J. Hummel, and Lisa G. McAlister, for intervening appellee, Vectren Energy Delivery of Ohio, Inc.
{¶ 57} In my view, the PUCO should have required that basic information of a similar nature be included by Vectren in its published notice.
{¶ 58} Nor do I agree with the majority that the deficiencies of Vectren’s published notice may properly be deemed waived based on the failure of the OCC to complain of the inadequacies of the Vectren notice at an earlier time. First, it is well established that jurisdictional deficiencies in administrative proceedings cannot be waived. Time Warner AxS v. Publ. Util. Comm. (1996), 75 Ohio St.3d 229, 661 N.E.2d 1097. And this court has long held that compliance with the notice requirement of R.C. 4909.19 gives interested parties the constructive notice of an application necessary to confer jurisdiction on the commission. Duff v. Pub. Util. Comm. (1978), 56 Ohio St.2d 367, 376, 10 O.O.3d 493, 384 N.E.2d 264. Second, R.C. 4909.18(E) requires that the published notice prominently state that “any person, firm, corporation, or association” may file objections to a proposed rate increase. It is impossible to determine what parties, if any, might have appeared and participated in the PUCO proceedings had meaningful and understandable notice been published. The OCC should have voiced its objections to the sufficiency of the newspaper notice in a more timely manner. However, its failure to have done so cannot be held against unknown persons, firms, corporations, or associations that potentially would have participated in the PUCO proceedings had Vectren complied with the notice statutes.
{¶ 59} Accordingly, I respectfully dissent.